IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | | |
|---|---|---|---|
| NAME OF PLAINTIFF | ) | | |
| | ) | | |
| PHILLIP KEMPER | ) | | |
| | ) | | |
| V. | ) | NO. | _____ |
| | ) | | JURY DEMANDED |
| | ) | | |
| NAME OF DEFENDANT | ) | | |
| | ) | | |
| CITY OF JACKSON, TENNESSEE, | ) | | |
| JULIAN WISER, INDIVIDUALLY | ) | | |
| and IN HIS OFFICIAL CAPACITY | | | |
| AS CHIEF OF POLICE OF | | | |
| JACKSON, TENNESSEE and SCOTT | | | |
| CONGER, INDIVIDUALLY and IN | | | |
| HIS OFFICIAL CAPACITY AS | | | |
| MAYOR OF JACKSON, TENNESSEE | | | |

**COMPLAINT FOR VIOLATIONS OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND EQUAL PROTECTION; VIOLATION OF THE TENNESSE WHISTLE BLOWER ACT AND VIOLATION OF THE TENESSEE MALICIOUS HARRASSMENT STATUTE**

COMES NOW the Plaintiff, PHILLIP KEMPER and sues the Defendants, CITY OF JACKSON, TENNESSEE, JULIAN WISER, INDIVIDUALLY and IN HIS OFFICIAL CAPACITY OF CHIEF OF POLICE OF JACKSON, TENNESSEE and SCOTT CONGER,

INDIVIDUALLY and IN HIS OFFICIAL CAPACITY AS MAYOR OF JACKSON, TENNESSEE for discrimination under Title 42 U.S.C 1983 and 1988 and for action states:

1. This action is brought pursuant to Title 42 U.S.C. 1983 and 1988 for violations of due process of law and equal protection. This is a claim of unlawful discrimination in accordance with 42 U.S.C §2000e to 2000e-16. Jurisdiction is specifically conferred on the Court by 42 U.S.C. § Title VII. Equitable and other relief are also sought under 42 U.S.C. § 1983.

## I. PARTIES AND JURISDICTION

2. Plaintiff, PHILLIP KEMPER, (hereinafter "Kemper) is a male citizen of the United States and resides in Jackson, Tennessee.

3. Defendant, CITY OF JACKSON, TENNESSEE (hereinafter "City) is a municipal corporation, organized and operating pursuant to the private acts of the State of Tennessee. The Jackson Police Department is a division of Jackson City Government.

4. Defendant, JULIAN WISER, (hereinafter "Wiser") was the Chief of Police of the Jackson Police Department.

5. Defendant, SCOTT CONGER, (hereinafter "Conger") is the Mayor of Jackson, Tennessee.

## II. FACTS

6. Plaintiff was employed by the Defendant, City of Jackson Police Department, Madison County, Tennessee on or about March 22, 2004 up until his being placed on administrative leave on or about December 21, 2021.

7. On or about May 22, 2019 Kemper had been promoted by Wiser to Major of Police Investigative Services.

8. This position included the ultimate supervision of both the Special Operations Division as well as the Criminal Investigations Division.

9. On or about October 15, 2020, Kemper emailed and scheduled a meeting set for Oct 19, 2020 with Asst. Chief Thom Corley, Lt. Gary Benton and several investigators in regards to the protocols which were currently being followed in the Criminal Investigation Division and Jackson Police Department as related to civil and criminal asset seizure processes to include cash.

10. After that meeting Kemper continued to seek education and guidance from the Jackson Police Department Evidence Custodian Aimee Oxley and City of Jackson Accounting personnel Cathy Keck about the proper protocols and also the law in Tennessee in regards to cash handling by local governments.

11. In January of 2021, Kemper sent out an email to all command staff and Lieutenants in Special Operations and the Criminal Investigation Dept. about implementing a new spreadsheet and accounting protocol for seizures in order to tightened up lax practices and ensure better accountability through uniform practices throughout the department.

12. On or about February 24, 2021, Kemper became aware and reviewed a seizure that was completed by JPD Patrol Officers after they had consulted with Metro Narcotic Investigators about the details of the case.

13. Upon reading the reports and statements of those involved, Kemper determined that the seizure was most likely going to be returned to the property owners by the court and instructed Capt. Jackie Benton to return the money to the occupants of the residence.

14. During the last few months of 2020 and the first couple months of 2021, Kemper had become aware of inconsistencies between how seized cash flowed through JPD Evidence and City Hall and how seized cash flowed through Jackson Madison County Metro Narcotics and City Hall.

15. These inconsistencies quickly became a serious concern for Kemper because as the Commander of Jackson PD and Criminal Investigation Dept, he was "ultimately responsible" for the Jackson Madison County Metro Narcotics Unit.

16. Kemper had the responsibility for the money being handled in Metro Narcotics, yet he did not have the direct supervising authority over Capt. Jackie Benton who was assigned in the Administrative Division but had job duties of handling the civil seizure processes of the Metro Narcotics Unit.

17. On or about March 4, 2021, Kemper began an unannounced audit of cash seizures being handled by Captain Jackie Benton where numerous deficiencies and improprieties were discovered.

18. During the interview portion of the unannounced audit, which was conducted in the presence of Thom Corley and in his office, Captain Jackie Benton advised she did not know how much cash she had in the Metro safe located at the Jackson Police Department Annex, but that it was a lot and she hadn't made a deposit in the bank in over 13 months.

19. Despite his best efforts Kemper could not get Wiser to make policy changes necessary to establish proper accounting.

20. Kemper brought the matter to the attention of Mayor Conger who showed no interest in the matter.

21. As a result of the refusal of Conger and Wiser to take action to restore proper procedures for the handling of confiscated funds, Kemper reported the alleged violations to the District Attorney's office of Madison County, who in turn requested an investigation by the Tennessee Controller of the Treasury.

22. The events that followed in the months after March 5, 2021 included an investigation by the State of Tennessee Comptroller's Office which showed a great deal of mismanagement, mishandling of cash, and missing money in the thousands of dollars.

23. The Investigation Report of the Tennessee Comptroller substantiated all of Kemper's allegations and found numerous violations.(Exhibit #1 – Investigation Report, April 1, 2022)

24. Because of bringing this mismanagement to light on March 4, 2021, Kemper immediately became a target of Wiser and Conger.

25. Wiser began an attempt to intimidate Kemper with the threat of frivolous internal affairs investigations in to Kemper's actions while he allowed Capt. J. Benton to remain on duty and unsupervised over the next days, weeks, and months while she continued to deposit cash in the bank alone and without the knowledge of Kemper or the Investigators of the Comptroller's Office.

26. On March 12, 2021 Kemper was made aware by Lt. Chris Long (Metro Unit Commander) that Lt. Trull from JPD Internal Affairs was calling Metro Investigators and asking to take statements of their involvement along with Kemper, Capt. J Benton, and Inv. Mike Arnold actions at the Annex on March 5, 2021.

27. Kemper advised Wiser and Asst. Chief Corley that he would not be intimidated by the threats of Internal Affairs while preforming his supervisory responsibilities.

28. On March 15, 2021, to seek relief and protection from the intimidation tactics of

Wiser, Kemper filed a grievance with Mayor Conger in regards to the previous actions of Wiser.

29. Kemper followed the grievance procedures regarding department heads from pages 22 and 23 in the City of Jackson's Employee Handbook.

30. Conger did not respond to the grievance according to the city policy which advises must be done within five days from receipt of the written grievance.

31. On May 5, 2021, Kemper delivered a second grievance to Conger.

32. On May 10, 2021 Conger provided Kemper with a written response to the grievances, however the issues were not resolved and instead became much worse.

33. August 26 2021, Kemper was notified by letter of being the "principal target" of an Administrative Internal Investigation by the City of Jackson.

34. The notification advised that Kemper would remain in his current fulltime supervisory responsibility and law enforcement authority pending the outcome of the investigation.

35. October 21, 2021 Kemper was notified via email that the City of Jackson had hired an "outside" attorney, Amber Shaw, to conduct the administrative investigation of Kemper.

36. On December 21, 2021, while on duty, Kemper was summoned to the Personnel Office at City Hall by Chief Thom Corley and in the presence of HR Director Lynn Henning and Lt. Trull of the JPD Internal Affairs Unit, Kemper was relieved of duty and placed on paid administrative leave.

37. Chief Corley took Kemper's badge, firearm, credentials, squad car and keys.

38. Director Henning advised Kemper that these actions were based on a report and the recommendation of the hired outside attorney who was handling the administrative internal investigation.

39. Director Henning then instructed Kemper he'd need to report for a "fit for duty" psychological exam in the next few days that would be scheduled by the City.

40. Kemper completed three days of interviews and several different psychological exams with the City's appointed psychologist, however Kemper was never forwarded an opportunity to see the results of this examination.

41. On January 26, 2022, Kemper completed an interview with Amber Shaw in regards to the administrative investigation being conducted.  Major Kemper cooperated completely and answered every question asked by Ms. Shaw.

42. On March 14, 2022, Kemper was called to the Jackson Police Department by Captain Gary Benton and served with another Administrative Internal Investigation.

43. Kemper cooperated completely with all phases of this investigation.

### III. DUE PROCESS VIOLATIONS

44. The City of Jackson has adopted a Municipal Code and Charter which has created a Civil Service Commission to protect classified police employees of which Kemper is a member.

45. As a result Kemper has a property interest in his continued employment.

46. Section 84 of the Municipal Code provides that no employee of classified status shall be discharged or demoted except for just cause.

47. Kemper has not been charged with any offence but has suffered the loss of job benefits due to his demotion to an administrative leave status.

48. Kemper has been made to suffer the loss of use of his city vehicle, in-service training pay and faces the imminent loss of his certified P.O.S.T. position which is required by the state of Tennessee in order for Kemper to maintain his status as a law enforcement officer.

49. The City is attempting to circumvent Kemper's procedural rights by leaving him on indefinite administrative leave without an opportunity to seek Civil Service review.

### IV. ALLEGATIONS OF DISCRIMINATION

50. Kemper alleges that the City has discriminated against him thus depriving him of equal protection based upon the fact that he has been placed on indefinite administrative leave, effectively ending his law enforcement career, when the female officer who is responsible for the mismanagement of City funds has not received any significant disciplinary action.

### V. WHISTLEBLOWER STATUTE

51. Kemper maintains that the actions taken against him were solely for his refusal to participate in or remain silent about improper activities at the Jackson Police Department regarding seized funds in violation of T.C.A. 50-1-304.

### VI. MALICIOUS HARRASSMENT

52. Upon information and belief Kemper alleges that Conger made an effort to fire him but was unable to do so due to the concern of the personnel division that such action would not be upheld by the Civil Service Commission.

53. Kemper alleges that Conger and Wiser used the administrative leave as a subterfuge to deny Kemper's rights to continued employment and paid Kemper's salary to prevent him from resuming his duties despite the fact that at all times Kemper was ready, willing and able to resume said duties.

54. During his eighteen (18) year career Kemper has handled numerous violent criminal and must be continuously aware of the safety of himself and his family.

55. The removal of his badge, weapon, radio and police cruiser (life lines to the dispatch office) has rendered him subject to retaliation.

56. As evidenced of the City's intent to continue the harassment of Kemper his position has been removed from the departmental organization chart.

## VII. DAMAGES

57. As a result of his constructive termination by the Defendant, the Plaintiff has been caused to suffer the following damages:

   a. loss of wages and benefits;

   b. damage to his reputation specifically as it relates to future employability in law enforcement;

   c. severe physical and mental anguish and emotional distress;

   d. medical and psychiatric costs to include bills for doctors, medicine, counselors and other treatment; and

   e. attorney fees and costs.

## VIII. PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff makes the following demand for relief:

1. That process issue and be served upon the Defendants and that they be required to answer in a timely manner or have the allegations herein be deemed admitted and a default judgment entered;

2. That the Court find that the Defendant/Defendants willfully discriminated against the Plaintiff on the basis of his sex, declare such practices of Defendant unlawful, and enjoin the Defendant from any further acts of discrimination based on sex;

3. That this Court order the Defendant to immediately reinstate Plaintiff to the position of Major with the Jackson Police Department;

4. That the Court find the actions of Conger and Wiser to have been an intentional violation of Plaintiff's constitutional rights and award punitive damages against each of them individually;

5. That this Court award the proper compensatory monetary damages, plus interest, to Plaintiff for his:

   a. back pay and loss of earnings;

   b. loss of fringe benefits;

   c. expenses for medical care, medicine, psychiatrical care, counseling services and physician costs; and

   d. all other losses incurred as a result of Defendant's actions, plus liquidated damages.

6. That this Court further award Plaintiff attorney's fees and costs of this action;

7. That this Court grant Plaintiff a trial by jury in this cause; and

8. That this Court grant Plaintiff such other and further relief as may be deemed just and proper.

Respectfully submitted,

05370ck/71<hiciv
s/Clyde W. Keenan

_____

Clyde W. Keenan, #5370
KEENAN LAW & CONSULTING
6465 N. Quail Hollow, #200
Memphis, TN  38120
(901) 767-1842