01129-222337 (JDB)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **PHILLIP KEMPER,** ) | |
| ) | |
|    **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | **1:22-CV-02689-STA-jay** |
| **CITY OF JACKSON, TENNESSEE,** ) | |
| **JULIAN WISER, INDIVIDUALLY and IN** ) | |
| **HIS OFFICIAL CAPACITY AS CHIEF OF** ) | |
| **POLICE OF JACKSON, TENNESSEE and** ) | |
| **SCOTT CONGER, INDIVIDUALLY and IN** ) | |
| **HIS OFFICIAL CAPACITY AS MAYOR** ) | |
| **OF JACKSON, TENNESSEE** ) | |
| ) | |
|    **Defendants.** ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS
## JOINT MOTION FOR JUDGMENT ON THE PLEADINGS[1]

In support of their motion to dismiss, Defendants City of Jackson, Tennessee ("the City"), Julian Wiser ("Chief Wiser"), individually and in his official capacity as Chief of Police of Jackson, Tennessee, and Scott Conger, individually and in his official capacity as Mayor of Jackson, Tennessee ("Mayor Conger") (collectively "Defendants") would show unto the Court as follows:

### I.   STATEMENT OF FACTS[2]

---

[1] A motion for judgment on the pleadings follows the same standard as a Rule 12(b)(6) motion to dismiss. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

1

01129-222337 (JDB)

On or about March 22, 2004, the City hired Plaintiff Phillip Kemper ("Kemper") as a police officer for the City of Jackson Police Department. Complaint at ¶ 6 (ECF No. 1 at Page ID 2). On or about May 22, 2019, Chief Wiser promoted Kemper to Major of Police Investigative Services. *Id*. at ¶ 7 (Page ID 3).

On August 26, 2021, the City notified Kemper that he was the subject of an internal investigation. *Id*. at ¶ 33 (Page ID 6). The City subsequently decided to hire an independent and impartial attorney, Amber Shaw, to investigate the allegations made against Kemper, and the City notified Kemper of this decision on October 21, 2021. *Id*. at ¶ 35. The outside investigator later recommended that Kemper be placed on paid administrative leave; thus, on December 21, 2021, the City notified Kemper that he "was relieved of duty and placed on paid administrative leave." *Id*. at ¶ 36 and 38.

After being placed on paid administrative leave, Kemper filed the instant lawsuit against Defendants alleging Due Process violations, discrimination, and state law claims of malicious harassment and violation of Tennessee's whistleblower statute. *Id*. at ¶¶ 44-56 (Page ID 7-9).

## II.   LAW AND ARGUMENT

---

[2] Because the Court must "construe[ ] the complaint in the light most favorable to the plaintiff and accept[ ] all well-pled factual allegations as true," the statement of facts is based exclusively on the factual allegations in the complaint. *Freeman v. Sullivan*, 954 F. Supp.2d 730, 737 (W.D. Tenn. 2013).

01129-222337 (JDB)

**A. The Court should dismiss Kemper's official-capacity claims against Mayor Conger and Chief Wiser because the claims are redundant since the City is a named defendant.**

Kemper alleges an official-capacity claim against Mayor Conger and Chief Wiser. Complaint at pp. 1-2 (Page ID 1-2). "'In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent.' 'An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009); *see also Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015). When the governmental entity is a named defendant, courts dismiss official-capacity suits as redundant. *See Holmes v. City of Jackson*, 2016 U.S. Dist. LEXIS 10729, at *8 (W.D. Tenn. Jan. 29, 2016) ("As the allegations against Wise, Gist, Kendrick, and Boxley in their official capacities are in effect a suit against the City of Jackson, these claims are DISMISSED as being redundant."); *Epperson v. City of Humboldt*, 140 F. Supp.3d 676, 683 (W.D. Tenn. 2015) ("When, as here, the entity is a named defendant, official capacity claims against individual sheriffs and police officers are 'redundant' and 'superfluous.' Those claims are, therefore, DISMISSED."). Therefore, the Court should dismiss Kemper's official-capacity claims against Mayor Conger and Chief Wiser.

**B. The Court should dismiss Kemper's due process claim because he has not been deprived of his due process rights since he is on paid administrative leave.**

01129-222337 (JDB)

Kemper asserts a Fourteenth Amendment Due Process claim. Complaint at ¶¶ 44-49 (Page ID 7-8). The Fourteenth Amendment's Due Process Clause "prohibits states from depriving 'any person of life, liberty, or property, without due process of law." *Paar v. City of Jackson*, 2020 U.S. Dist. LEXIS 63722, at *11-12 (W.D. Tenn. Apr. 10, 2020) (quoting U.S. Const. amend. XIV, § 1).  As this Court previously explained, for "procedural due process, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Id*. at *12 (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); and *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Consequently, "a constitutional claim under § 1983 is not complete when the deprivation occurs; it is complete only when the state fails to provide due process." *Id*. (citing *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)).

To establish a prima facie case for this claim, Kemper "must prove three elements: (1) [ ]he had a life, liberty, or property interest protected by  the Due Process Clause of the Fourteenth Amendment; (2) the City of Jackson deprived h[im] of h[is] protected interest; and (3) the City did not afford h[im] adequate procedural rights before depriving h[im] of this protected interest." *Id*. at *12-13 (citing *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349-50 (6th Cir. 2010)). Kemper's claim fails because he cannot establish the second element.

Here, Kemper has not alleged that the City terminated him. Complaint. Instead, Kemper admits that he is "on paid administrative leave" as part of an "administrative internal investigation." *Id*. at ¶¶ 6, 36 and 38 (Page ID 2 and 6). Courts have held that an employee is not entitled to due process when placed on paid administrative leave.

4

01129-222337 (JDB)

*See Eggers v. Moore*, 257 Fed. App'x 993, 995 (6th Cir. 2007) (holding that "no due process was due prior to placing Eggers on administrative leave" because "paid leave is not an adverse employment action"); *Joseph v. City of Columbus*, 2006 U.S. Dist. LEXIS 69962, at *21-22 (S.D. Ohio Sept. 27, 2006) (holding that, because the plaintiff was placed on paid administrative leave, he "did not suffer a deprivation of property and Defendants accordingly did not violate his due process rights"); and *Falzone v. Licastro*, 2012 U.S. Dist. LEXIS 27628, at *15 (N.D. Ohio Mar. 4, 2012) ("Falzone's Fourteenth Amendment procedural-due-process claims—premised on his relegation to paid administrative leave—are also insufficient. '[T]he suspension of even a tenured public employee with pay avoids due process problems entirely.'"). Therefore, because Kemper is not entitled to due process rights for paid administrative leave, Kemper's procedural due process claim fails. *See e.g. Paar*, 2020 U.S. Dist. LEXIS 63722, at *13 (dismissing procedural due process claim because the plaintiff failed to establish that the City deprived her of her protected interest since it had not terminated the plaintiff).

**C. The Court should dismiss Kemper's Fourteenth Amendment Equal Protection Clause discrimination claim because Kemper did not suffer an adverse employment action since he is on paid administrative leave.**

Kemper asserts a claim under the Fourteenth Amendment's Equal Protection Clause based on different treatment because of his gender. Complaint at ¶ 50 (Page ID 8). To prove gender discrimination under the equal protection clause, Kemper must prove the same elements as a Title VII gender discrimination claim. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 917-18 (6th Cir. 2014) (citing *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003)) ("The elements for establishing

5

01129-222337 (JDB)

an Equal Protection claim under § 1983 and the elements for establishing a violation of Title VII disparate treatment claim are the same."). Since there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting analysis applies, and Kemper must first establish a prima facie case of discrimination. *Gower v. Grundy Cnty., Tenn.*, 2007 U.S. Dist. LEXIS 113183, at *17 (E.D. Tenn. Aug. 7, 2007). To establish a prima facie case, Kemper must show, among other things, that he "suffered an adverse employment decision." *Jones v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 2013 U.S. Dist. LEXIS 94831, at *9 (W.D. Tenn. Jan. 2, 2013) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 892-93 (6th Cir. 2012)).

Kemper failed to state a claim because he admittedly has not suffered an adverse employment action. Specifically, Kemper admits that he was "placed on paid administrative leave" during an "administrative internal investigation." Complaint at ¶¶ 6, 36, and 38 (Page ID 2 and 6). Being placed on paid administrative leave is not an adverse employment action. *See Dendinger v. Ohio*, 207 Fed. App'x 521, 527 (6th Cir. 2006) ("We have repeatedly held, however, that neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action."); *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (holding that an employee did not suffer an adverse employment action when placed on paid administrative leave during an investigation); *McClane v. Genesee Cnty. Rd. Comm'n*, 2020 U.S. Dist. LEXIS 49127, at *27-28 (E.D. Mich. Mar. 20, 2020) ("defendant is entitled to summary judgment because being placed on paid leave is not adverse action."); *Spellman v. Ohio DOT*, 244 F. Supp.3d 686, 702 (S.D. Ohio 2017)

01129-222337 (JDB)

(concluding that paid administrative leave did not constitute adverse employment action); and *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp.3d 711, 723 (E.D. Mich. 2021) (concluding that the plaintiff failed to state a race discrimination claim because the plaintiff "has not alleged that she suffered an adverse employment action" since she "admits that she was placed on paid leave"). Therefore, Kemper failed to state a claim under the Fourteenth Amendment's equal protection clause.

   D. **The Court should dismiss Kemper's claim, if any, under Title VII because he did not exhaust his administrative remedies before the EEOC and he did not suffer an adverse employment action since he is on paid administrative leave.**

In his complaint, Kemper also references Title VII. Complaint at ¶ 1 (ECF No. 1 at Page ID 2). But Kemper never addresses Title VII any further in his complaint. To the extent Kemper relies upon Title VII, his claim fails for two reasons.

First, for Title VII, before filing a lawsuit, the employee must exhaust his or her administrative remedies by filing a charge of discrimination with the EEOC. *Kilpatrick v. HCA Human Res., LLC*, 838 Fed. App'x 142, 145 (6th Cir. 2020). Kemper failed to allege that he exhausted his administrative remedies or attach a right-to-sue letter proving he exhausted his administrative remedies. Complaint (ECF No. 1 at Page ID 1-11). Thus, Kemper failed to exhaust his administrative remedies before the EEOC. *See Doll v. City of Cent. Mun. Water & Sewer*, 2014 U.S. Dist. LEXIS 23264, at *6-7 (W.D. Ky. Feb. 24, 2014) (dismissing plaintiff's Title VII claims because he failed to exhaust his administrative remedies with the EEOC); *Ulmer v. Dana Driveshaft Mfg.*, 2016 U.S. Dist. LEXIS 2372, at *6 (N.D. Ohio Jan. 8, 2016) (dismissing Title VII retaliation claim because plaintiff failed to exhaust his administrative remedies with the EEOC); and

7

01129-222337 (JDB)

*Martin v. PCC Airfoils, LLC*, 2015 U.S. Dist. LEXIS 18879, at *9 (N.D. Ohio Feb. 17, 2015) (concluding that plaintiff's discrimination claims were barred because plaintiff failed to exhaust his administrative remedies with the EEOC).

Second, since both claims follow the same analysis, as explained for Kemper's equal protection claim, Kemper failed to state a claim because he did not suffer an adverse action since he was only placed on paid administrative leave. *See Hearod v. Fifth Third Bank*, 2022 U.S. Dist. LEXIS 49261, at *12 (S.D. Ohio Mar. 21, 2022) ("Without having suffered a 'materially adverse employment action,' Plaintiff cannot establish her prima facie case of employment discrimination."). Therefore, Kemper failed to state a claim under Title VII.

### E. The Court should dismiss Kemper's claim under Tennessee's whistleblower statute because the City has not terminated Kemper, an essential element under the whistleblower statute.

Kemper alleges a claim under the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304. Complaint at ¶ 51 (Page ID 8). Specifically, Kemper alleges that "the actions taken against him were solely for his refusal to participate in or remain silent about improper activities at the Jackson Police Department regarding seized funds." *Id*. But Kemper failed to state a claim under the TPPA.

Under the TPPA, "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (2022). The TPPA further provides that only "terminated" employees "shall have a cause of action against the employer for retaliatory discharge."

8

01129-222337 (JDB)

Tenn. Code Ann. § 50-1-304(c)(1) (2022). Thus, by its plain terms, the TPPA requires that Kemper be terminated in order to have a claim.

Tennessee courts have confirmed that the TPPA only protects against terminations. Specifically, the Supreme Court recently explained that the TPPA requires that the employee show that he was terminated and prove a causal connection between the protected activity and the termination:

> For both types of retaliatory discharge, the plaintiff must show that he was employed by the defendant and that he was discharged. In a whistleblowing claim, the plaintiff must show that he refused to remain silent about his employer's illegal activities, and the requisite causal relationship between his refusal to remain silent and discharge. In a refusal-to-participate claim, the plaintiff must show that he refused to participate in illegal activities and the requisite causal relationship between his refusal to participate and his discharge.

*Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015) (quoting *VanCleave v. Reelfoot Bank*, 2009 Tenn. App. LEXIS 724, at *8 (Tenn. Ct. App. Oct. 30, 2009)). Indeed, a prima facie case under the TPPA requires that Kemper prove, among other things, that the City "discharged or terminated [Kemper's] employment." *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 27 (Tenn. 2011). And Kemper must allege such to state a claim. *Harman v. Univ. of Tenn.*, 353 S.W.3d 734, 737 (Tenn. 2011).

In *Harman*, the Supreme Court considered the meaning of the terms "termination of employment" and "discharge" under the TPPA because the employer had demoted the plaintiff from his position as a department head but continued employing the plaintiff as a professor. *Id.* at 737-38. Relying on the dictionary definitions of these terms, the Court concluded that "the plain and ordinary meaning of the words 'discharged' and

9

01129-222337 (JDB)

'terminated' is a complete severance of the employment relationship." *Id*. at 738.

Therefore, the Court held:

> We conclude that the legislature intended that there be a complete severance of employment before a claim arises under the TPPA. The University continued to employ Dr. Harman as a tenured professor after removing him as department head. Because there was no termination or discharge as is required to maintain a cause of action under the TPPA, Dr. Harman's complaint is not sufficient to state a cause of action under the TPPA.

*Id*. at 739.

Here, like the plaintiff in *Harman*, Kemper failed to state a prima facie case under the TPPA because, as admitted in the complaint, the City has not terminated or discharged Kemper. Complaint (ECF No. 1 at Page ID 1-11). Specifically, Kemper admits that he is "on paid administrative leave" as part of an "administrative internal investigation." *Id*. at ¶¶ 6, 36, and 38 (Page ID 2 and 6). Therefore, because he has conceded that the City has not terminated or discharged him, Kemper's TPPA claim fails as a matter of law. *See Harman*, 353 S.W.3d at 737-39.

**F. The Court should dismiss Kemper's malicious harassment claim because Kemper has not alleged any basis to establish that Defendants were motivated by Kemper's race, color, religion, ancestry, or national origin or that Defendants acted maliciously from ill-will, hatred, or spite.**

Kemper asserts a malicious harassment claim. Complaint at ¶¶ 52-56. Kemper has not identified the source of his malicious harassment claim. However, Tennessee state law provides a civil cause of action for malicious harassment. Tenn. Code Ann. § 4-21-701 (2022). This cause of action does not arise under federal law. *Douglas v. Tennessee*, 2013 U.S. Dist. LEXIS 125290, at *14-15 (W.D. Tenn. Sept. 3, 2013).

"[T]he Tennessee Supreme Court has concluded that a claim of malicious

10

01129-222337 (JDB)

harassment requires a plaintiff to allege: (1) that the defendant acted maliciously from 'ill-will, hatred or spite,' and (2) that the defendant 'unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injury or coercing another person or by damaging, destroying or defacing any real or personal property of another person.'" *Montgomery*, 2020 U.S. Dist. LEXIS 124729, at *29-30 (quoting *Washington v. Robertson Cnty.*, 29 S.W.3d 466, 473 (Tenn. 2000) and *Jackson v. City of Cleveland*, 2016 Tenn. App. LEXIS 606, at *8 (Tenn. Ct. App. Aug. 22, 2016)). In addition to these requirements, "a plaintiff must also allege that the defendant was motivated by the plaintiff's race, color, religion, ancestry, or national origin." *Id.* at *30 (citing *Jackson*, 2016 Tenn. App. LEXIS 606, at *8). "To prevail on a claim of malicious harassment, a plaintiff must show that a defendant 'intentionally intimidated the plaintiff from the free exercise of a constitutionally protected right, and that the offending conduct was motivated by the plaintiff/victim's race, color, religion, ancestry or national origin.'" *Setzer v. First Choice Lending Servs., LLC*, 2018 U.S. App. LEXIS 25681, at *8-9 (6th Cir. Sept. 10, 2018) (quoting *Bowman v. City of Memphis*, 329 S.W.3d 766, 768 (Tenn. Ct. App. 2010)).

Kemper's allegations for his malicious harassment claim are:

> 52. Upon information and belief Kemper alleges that Conger made an effort to fire him but was unable to do so due to the concern of the personnel division that such action would not be upheld by the Civil Service Commission.
>
> 53. Kemper alleges that Conger and Wiser used the administrative leave as a subterfuge to deny Kemper's rights to continued employment and paid Kemper's salary to prevent him from resuming his duties despite the fact that at all times Kemper was ready, willing and able to resume said duties.
>
> 54. During his eighteen (18) year career Kemper has handled numerous

11

01129-222337 (JDB)

> violent criminal and must be continuously aware of the safety of himself and his family.
>
> 55. The removal of his badge, weapon, radio and police cruiser (life lines to the dispatch office) has rendered him subject to retaliation.
>
> 56. As evidenced of the City's intent to continue the harassment of Kemper his position has been removed from the departmental organization chart.

Complaint at ¶¶ 52-56 (ECF No. 1 at Page ID 8-9). Kemper's allegations fail to show that the City, Mayor Conger, or Chief Wiser acted maliciously from ill-will, hatred, or spite or that Kemper was targeted because of his race, color, religion, ancestry, or national origin. *Id*. Nor do these allegations show that Kemper was intimidated from the free exercise of a constitutional right. *Id*. Therefore, Kemper failed to state a claim. *See Setzer*, 2018 U.S. App. LEXIS 25681, at *8-9 (concluding that the plaintiff failed to state a malicious harassment claim because her allegations failed to "show that she was targeted on the basis of a protected class or that she was otherwise intimidated from the free exercise of a constitutional right"); *Bowman*, 329 S.W.3d at 769 (dismissing malicious harassment claim when the plaintiff admitted "that she cannot in good faith allege that the police officers' conduct complained of in this case was motivated by considerations of race, color, religion, ancestry or national original"); and *Montgomery*, 2020 U.S. Dist. LEXIS 124729, at *30 (dismissing malicious harassment claim because the plaintiff "made no such allegation concerning Defendant Jamison's motivation").

**G. The Court should dismiss Kemper's claims against Mayor Conger and Chief Wiser because they are entitled to qualified immunity.**

Kemper has sued Mayor Conger and Chief Wiser in their individual capacity. Complaint at pp. 1-2 (Page ID 1-2). Mayor Conger and Chief Wiser, however, are

12

01129-222337 (JDB)

entitled to qualified immunity.

Qualified immunity protects governmental officials "from liability for civil damages in so far as the [official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity thus shields governmental officials "from harassment, distraction, and liability when they perform their duties reasonably." *Id*. To ensure that the immunity is not lost, courts must resolve qualified immunity at the earliest possible stage. *Id*.

Courts ask two questions in their qualified immunity analysis: (1) did the governmental official violate the plaintiff's constitutional rights? and (2) was the right clearly established? *Id*. at 232. Courts have discretion in deciding which question to consider first. *Id*. at 236. While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Consequently, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*.

Here, Mayor Conger and Chief Wiser are entitled to qualified immunity because Kemper has not alleged any basis for a violation of his constitutional or statutory rights—by the City, Mayor Conger, or Chief Wiser. Kemper has alleged violations of his rights under the Due Process clause and the Equal Protection clause of the Constitution, Title VII, and violation of the TPPA and Tennessee's malicious harassment statute. Complaint at ¶¶ 44-56 (Page ID 7-9). But as explained in sections B-F above, Kemper failed to state a claim for relief under Title VII, the TPPA, malicious harassment statute, or the Fourteenth Amendment. Without any statutory or constitutional violation,

13

01129-222337 (JDB)

Mayor Conger and Chief Wiser are entitled to qualified immunity. *See Palmer v. Wagner*, 3 Fed. App'x 329, 331 (6th Cir. 2001) ("Because Palmer failed to allege a constitutional violation, the district court properly concluded that Wagner was entitled to qualified immunity with respect to Palmer's First and Fourteenth Amendment claims."). Therefore, the Court should dismiss Kemper's claims against Mayor Conger and Chief Wiser. *See e.g., Huber v. Nolan*, 2019 U.S. Dist. LEXIS 216684, at *15-16 (S.D. Ohio Nov. 13, 2019) ("The undersigned agrees, and further concludes that both Defendants are entitled to qualified immunity based upon Plaintiff's failure to sufficiently allege any constitutional violation."), *report and recommendation adopted at* 2019 U.S. Dist. LEXIS 215548 (S.D. Ohio Dec. 16, 2019).

### III.    CONCLUSION

Because, as explained above, Kemper failed to allege any viable claims against Defendants, the Court should dismiss Kemper's claims against the City, Chief Wiser, and Mayor Conger.

>Respectfully submitted,
>
>RAINEY, KIZER, REVIERE & BELL, P.L.C.
>
>By:   s/ John D. Burleson
>      JOHN D. BURLESON, BPR NO. 010400
>      MATTHEW R. COURTNER, BPR NO. 029113
>      *Attorney for Defendants City of Jackson, Julian Wiser, in his official capacity only, and Mayor Conger in his official and individual capacity*
>      209 East Main Street
>      P. O. Box 1147
>      Jackson, TN  38302-1147
>      (731) 423-2414
>      jburleson@raineykizer.com
>      mcourtner@raineykizer.com

01129-222337 (JDB)

                        FLIPPIN COLLINS & HILL, PLLC

By:   s/ Michael Hill with permission
       MICHAEL HILL, BPR NO. 017409
       *Attorney for Defendant Julian Wiser, in his individual capacity*
       P.O. Box 679
       1066 S. Main Street
       Milan, TN 38358-0679
       (731) 686-8355
       mh_fch@bellsouth.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 10th day of August, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing report, including the party below. All other parties will be served by facsimile, e-mail, or regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

| | |
|---|---|
| Clyde W. Keenan<br>Keenan Law & Consulting<br>6465 N. Quail Hollow, #200<br>Memphis, Tennessee 38120<br>*Attorney for Plaintiff* | Michael Hill<br>Flippin Collins & Hill, PLLC<br>P.O. Box 679<br>1066 S. Main Street<br>Milan, Tennessee 38358<br>*Attorney for Defendant Julian Wiser in his individual* |

                                      s/ John D. Burleson