IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

PHILLIP KEMPER,

    Plaintiff,

v.   Case No. 1:22-cv-02689-MSN-jay
    JURY DEMAND

CITY OF JACKSON, TENNESSEE,
JULIAN WISER, INDIVIDUALLY and IN
HIS OFFICIAL CAPACITY AS CHIEF OF
POLICE OF JACKSON, TENNESSEE and
SCOTT CONGER, INDIVIDUALLY and IN
HIS OFFICIAL CAPACITY AS MAYOR
OF JACKSON, TENNESSEE,

    Defendants.

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. Plaintiff Phillip Kemper moves for summary judgment (ECF No. 47) on his due process, equal protection, and whistleblower claims. Defendants filed two separate motions. The first motion was jointly filed on behalf of the City of Jackson; Mayor Scott Conger, individually and in his official capacity; and Police Chief Julian Wiser, in his official capacity only. (ECF No. 48.) And the second was filed solely by Chief Wiser in his individual capacity. (ECF No. 51.) The parties have filed responses and replies, including supplemental briefing addressing the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024). Having thoroughly reviewed

the parties' submissions, the record,[1] and legal authorities, the Court concludes that, while most claims will be dismissed, Plaintiff's due process claims and equal protection claims against the City of Jackson present a genuine issue of material fact that must be resolved at trial.

## **BACKGROUND**

Plaintiff Phillip Kemper has served as a police officer with the City of Jackson Police Department for nearly two decades. (*See, e.g.*, ECF No. 53-1 at PageID 536.) On May 22, 2019, he was promoted to Major. (*See, e.g.,* I*d.)* While serving as Commander of the Special Operations Division and Criminal Investigations Division in March of 2021, Major Kemper conducted an unannounced audit of cash seizures being handled by Captain Jackie Benton. (*See, e.g.,* i*d. a*t 536–38.) This audit revealed that Captain Benton "did not know how much cash was located in the Jackson Police Department vault" and "had not made a bank deposit in over thirteen (13) months." (*See, e.g.,* i*d. a*t 538.)

Following Major Kemper's disclosure of these irregularities, he was notified on August 26, 2021, that he was the subject of an internal investigation. (ECF No. 54-1 at PageID 558.) The City hired outside attorney Amber Shaw to conduct the investigation. (*Id.)* On December 21, 2021, Major Kemper was summoned to the Personnel Office and placed on paid administrative leave.[2] (*See, e.g.*, ECF No. 53-1 at 538.)

---

[1] Defendants also filed a Motion for Judgment on the Pleadings (ECF No. 31). Given the Court's rulings on the cross-motions for summary judgment and the overlapping issues addressed therein, the Motion for Judgment on the Pleadings is **DENIED** as moot.

[2] Defendants characterize Major Kemper's administrative leave as part of an "administrative internal investigation." (ECF No. 48-1 at PageID 347.) However, the leave has now persisted for over three years without formal charges or resolution. (*See, e.g.*, ECF No. 53-1 at 539–40.) This duration far exceeds what could be considered a reasonable timeframe for a typical investigative process.

Although the City continues to pay Major Kemper his base salary (*See, e.g.*, ECF No. 54-1 at 559.), he was stripped of law enforcement credentials, vehicle, equipment, and the ability to maintain required Peace Officer Standards and Training Commission ("POST") certification. (*See, e.g.*, ECF No. 53-1 at 538 and 541). This suspension has continued for three years without formal charges or a hearing. (*See, e.g.*, ECF No. 53-1 at 539–40.) Major Kemper alleges this extended suspension violates his Fourteenth Amendment due process and equal protection rights. (ECF No. 1 at PageID 7–8.) Additionally, Major Kemper asserts Title VII claims of sex discrimination, Tennessee Whistleblower Act violations, and malicious harassment claims. (*Id.* at PageID 8–9.) In contrast to Major Kemper's treatment, Captain Benton received a one-day suspension for the mishandling of seized funds. (*See, e.g.*, ECF No. 53-1 at 541.) Based on these allegations and disparities, Major Kemper seeks relief for multiple violations of his rights.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment—and the Court to grant summary judgment—"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports,*

*Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (cleaned up). Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254. Thus, if the plaintiff must ultimately prove its case at trial by a

4

preponderance of the evidence, on a motion for summary judgment, the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

Finally, the fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citing *Mingus Constructors v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Id.*

## DISCUSSION

### A.  Official Capacity Claims

Defendants seek dismissal of claims against Mayor Conger and Chief Wiser in their official capacities as redundant since the City is a named defendant. (ECF No. 48-1 at PageID 345.) "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) (quoting *Kentucky v. Graham*, 473 U.S.

5

159 (1985)). When the governmental entity is a named defendant, official capacity claims are properly dismissed as redundant. *Holmes v. City of Jackson*, No. 15-1253, 2016 U.S. Dist. LEXIS 10729, at *8 (W.D. Tenn. Jan. 29, 2016) (citing *Cox v. Reagan*, No. 3:06-cv-250, 2009 U.S. Dist. LEXIS 72718, at *18 (E.D. Tenn. Aug. 17, 2009) (holding an official capacity claim against an officer was essentially a suit against the defendant municipality and thus, dismissal of the officer was appropriate).

Because the City of Jackson is already a named defendant, the official capacity claims against Mayor Conger and Chief Wiser are hereby dismissed as duplicative.

**B.    Qualified Immunity**

The doctrine of qualified immunity shields government officials performing discretionary functions unless (1) they violated a constitutional right that (2) was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For a right to be "clearly established," its contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to establish that the official is not entitled to immunity. *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 418 (6th Cir. 2015) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

Both Mayor Conger and Chief Wiser raised qualified immunity in their motions for summary judgment, arguing that Major Kemper failed to show a violation of clearly established constitutional or statutory authority. (ECF No. 48-1 at PageID 358–60; ECF No. 51-1 at PageID 431–33). Major Kemper, however, did not respond to the qualified immunity argument in his opposition briefs. (ECF No. 54; ECF No. 56.)

The Sixth Circuit has recently reaffirmed that "at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments." *Paul v. Whitley Cnty.*, No. 24-5142, 2024 U.S. App. LEXIS 24661, at *4 (6th Cir. Sept. 30, 2024) (quoting *Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022)). Specifically, where a defendant raises qualified immunity, a plaintiff's failure to adequately address this defense means they "cannot meet [their] burden to show that [the defendant] is not entitled to qualified immunity." *Id*. at *5 (citing *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). Even a fleeting or cursory reference to qualified immunity is "insufficient" to preserve the argument. *Id*. (citing *Doe v. Bd. of Regents of Univ. of Mich.*, No. 22-2095, 2023 U.S. App. LEXIS 20969, at *6 (6th Cir. Aug. 9, 2023); *Brown v. United States*, 545 F. App'x 435, 437–38 (6th Cir. 2013)).

By failing to respond to Mayor Conger's and Chief Wiser's qualified immunity defenses, Major Kemper has forfeited his claims against both defendants in their individual capacities.[3]

Accordingly, all claims against Mayor Conger and Chief Wiser in their individual capacities are hereby dismissed.

C.  **Due Process Claims**

The Due Process Clause of the Fourteenth Amendment prohibits States and local governments from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Federal courts have long recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.

---

[3] Forfeiture, as used in this order, occurs when the non-moving party fails to respond after the burden shifts to them to overcome a properly supported defense. Abandonment, by contrast, applies when the moving party retains the initial burden to show no genuine issue of material fact exist.

532, 538 (1985); *Relford v. Lexington-Fayette Urban Cnty. Gov't*, 390 F.3d 452, 460 (6th Cir. 2004) (recognizing that "[u]nder state law, government and civil service employees may have a property right in their continued employment"). Here, the City's Civil Service Rules explicitly provide that "no person holding any classified position of employment shall be discharged from the service of the city or demoted except for just cause." (ECF No. 47-1 at PageID 261.) This provision creates a legitimate expectation of continued employment, triggering due process protection. *See Cleveland Bd. of Educ.*, 470 U.S. at 538–39. As a civil service employee (s*ee, e.g.* ECF No. 53-1 at PageID 541–42), Major Kemper has a protected property interest in his employment. (ECF No. 53 at PageID 512).

Major Kemper's claim hinges on whether his placement on prolonged paid administrative leave, coupled with significant professional restrictions, constitutes a deprivation of his protected property interest under the Fourteenth Amendment. (*See, e.g.*, ECF No. 47-1 at PageID 267–68.) While the City emphasizes that administrative leave with pay does not implicate due process rights (*see, e.g.*, ECF No. 48-1), Major Kemper contends that the practical impact of his leave—including the removal of his credentials, law enforcement authority, and ability to maintain POST certification—amount to a de facto deprivation requiring due process protections. (*See, e.g.*, ECF No. 47-1 at PageID 267–69.)

Even before the Supreme Court's decision in *Muldrow*, the Sixth Circuit had begun moving away from a formalistic approach to paid administrative leave. In *Kaplan v. University of Louisville*, the court explicitly rejected the notion that paid administrative leave creates a "safe harbor" from due process scrutiny. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 581 n.3 (6th Cir. 2021). The court in *Kaplan* emphasized that *Gilbert v. Homar* "dispels the notion that [the Supreme Court] established a per se safe harbor for all paid suspensions." *Id.* Instead, courts must

consider "the length and finality of the deprivation." *Id.* (cleaned up). The pre-*Muldrow* recognition that paid leave does not automatically preclude due process claims foreshadowed the Supreme Court's approach in *Muldrow*, which now requires courts to look beyond traditional markers such as pay status.

    1.    <u>*Impact of Muldrow Decision*</u>

The Supreme Court's decision in *Muldrow* fundamentally altered this analysis. Major Kemper asserts that *Muldrow* requires courts to assess the substantive impact of employment actions on working conditions rather than focus on pay status alone. (ECF No. 66 at PageID 666.) He argues that the indefinite nature of his leave, combined with his exclusion from meaningful work and professional development opportunities, materially altered his employment conditions, effectively creating a deprivation of his property interest. (ECF No. 47-1 at PageID 259–60.)

The City responds that *Muldrow* does not extend to cases involving paid administrative leave and emphasizes that Major Kemper remains an active employee of the City with full pay and benefits. (ECF No. 70 at PageID 674.) Further, the City argues that while Plaintiff's duties are suspended, his employment status and compensation have not been altered sufficiently to trigger procedural due process protections under Sixth Circuit precedent, including *Eggers v. Moore*, 257 F. App'x 993, 995 (6th Cir. 2007) (holding "no [due] process was due prior to placing [plaintiff] on administrative leave" because "paid leave is not an adverse employment action").

The Supreme Court in *Muldrow* rejected such formalism and instructed courts to look beyond traditional markers such as rank or salary to examine whether an employee has suffered meaningful changes in working conditions. *See Muldrow*, 601 U.S. at 359. The relevant inquiry is not whether the harm is "significant" in some abstract sense but whether the individual is placed in a materially worse position with respect to the employment. *Id.* at 354–60. As the Sixth Circuit

9

recently explained in the context of employment actions, *Muldrow* established that a challenged action need only create "some harm respecting an identifiable term or condition of employment" rather than meeting a "heightened bar" of harm." *McNeal v. City of Blue Ash*, 117 F.4th 887, 900 (6th Cir. 2024). This framework for analyzing changes to employment conditions informs our assessment of when administrative leave triggers due process protections.[4]

Here, Major Kemper has been subjected to significant professional restrictions, including loss of his police vehicle and equipment, ability to maintain required POST certification, and removal from in-service training opportunities, which creates a genuine issue of material fact whether Plaintiff is entitled to due process protections and whether the restrictions imposed on him, taken as a whole, rise to the level of a meaningful alteration in the terms and conditions of his employment. These issues are appropriately left for resolution by a jury.

   2.   *Constructive Discharge Analysis*

Major Kemper contends that the cumulative effect of these conditions amounts to a constructive discharge. (ECF No. 47-1 at PageID 262–67.) In response, the City argues Major Kemper cannot claim constructive discharge while still receiving a salary. (ECF No. 48-1 at Page ID 351–53.)

Under Sixth Circuit precedent, a constructive discharge exists when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376, F.3d 529, 533–34 (6th Cir. 2004) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982). The Sixth Circuit recently clarified that administrative leave with prolonged restrictions on duties, combined with

---

[4] Recent district court cases are beginning to grapple with *Muldrow*'s implications for analyzing changes to working conditions. *See, e.g.,* O*bermeyer v. McDonough,* No. 1:23-cv-711, 2024 U.S. Dist. LEXIS 149621, at *17–22 (S.D. Ohio Aug. 21, 2024).

10

reputational harm and lack of resolution, may constitute constructive discharge. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 886–87 (6th Cir. 2024) ("[O]ne might reasonably argue that a temporary suspension even with pay causes some harm and also concerns a term or condition of the job.") (cleaned up).

In *Blick*, the Sixth Circuit acknowledged that paid leave may not create a "safe harbor" from due process scrutiny, though it did not resolve this issue because the plaintiff failed to raise it in her opening brief. *Blick*, 105 F.4th at 886–87. As one district court in our Circuit recently observed, this represents a shift from the previous precedent, where suspension with pay "avoid[ed] due process problems entirely." *Jaleelah Ahmed v. Sch. Dist.*, No. 2:22-cv-11127, 2024 U.S. Dist. LEXIS 169748, at *36 (E.D. Mich. Aug. 26, 2024) (quoting *Kirby v. Fitzgerald Pub. Sch. Dist.*, No. 16-13868, 2017 U.S. Dist. LEXIS 134818, at *9 (E.D. Mich. Aug. 23, 2017)). A blanket rule no longer exists. *Id*.

Here, Major Kemper has been stripped of all law enforcement authority for three years, prevented from maintaining required professional certifications, and left in employment limbo without charges or hearing. These restrictions have effectively deprived Major Kemper of the ability to perform the core functions of his role, which supports his argument for constructive discharge.

Given these circumstances, genuine issues of material fact exist regarding whether the cumulative effect of Major Kemper's administrative leave, professional restrictions, and prolonged uncertainty amounts to a constructive discharge requiring due process protections. Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that the City's actions effectively altered the terms and conditions of Major Kemper's employment sufficiently to trigger due process requirements, despite the continuation of his salary.

Accordingly, summary judgment must be denied on the due process claim against the City of Jackson. For these reasons, Plaintiff's motion for summary judgment on the due process claim is also denied.

**D.      Equal Protection Claims**

The Equal Protection Clause of the Fourteenth Amendment mandates that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In the employment context, to establish a claim under the Equal Protection Clause, a plaintiff must demonstrate that they were treated differently than similarly situated individuals and that the differential treatment lacked a rational basis. *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Further, where an employee alleges disparate treatment based on individual circumstances, courts require a showing that the employee was similarly situated in all relevant respects to others who were treated differently. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352–53 (6th Cir. 1998).

Defendants argue that Major Kemper has failed to respond to their motion for summary judgment regarding his equal protection claims, thereby abandoning them. (ECF No. 57 at PageID 627–28.) The Sixth Circuit has held that "[a] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich. Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). However, such a failure does not automatically entitle the movant to judgment. A court must still determine whether the movant has demonstrated the absence of a genuine dispute of material fact through proper evidentiary designations. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). While a party's failure to respond to specific arguments can indicate abandonment, it does not relieve the court of its duty to ensure that summary judgment is appropriate based on the properly supported material facts cited by the

12

moving party. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403–07 (6th Cir. 1992). The scope of this review, however, is not unlimited. Courts are not required to search the entire record *sua sponte* for genuine disputes of material fact but must examine the evidence properly designated by the moving part to determine if summary judgment is warranted. *Street*, 886 F.2d at 1479–80 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

In their motions, Defendants assert that Plaintiff failed to identify evidence supporting an adverse employment action. (ECF No. 48-1 at PageID 348–49; ECF No.51-1 at PageID 419–21.) Plaintiff's response (ECF No. 56) and supplemental briefing (ECF No. 66) focus exclusively on his due process claim. Plaintiff's response briefs do not address the equal protection claims.

Nevertheless, in light of *Muldrow* and the Court's earlier analysis finding that Major Kemper's administrative leave restrictions constitute an adverse action, this element of the equal protection claim has been established. The City's primary argument for summary judgment of the equal protection claim—that paid administrative leave cannot constitute an adverse employment action—is rejected for the same reasons discussed in the due process analysis above.

The record shows that Major Kemper has presented evidence that after discovering and reporting irregularities in Captain Benton's handling of seized funds, he was placed on indefinite administrative leave with significant professional restrictions, while Captain Benton received only a one-day supervision for the underlying misconduct. While Defendants vigorously contest

13

whether administrative leave constitutes an adverse action, they have not moved for summary judgment on the grounds that Captain Benton is an improper comparator.[5]

When viewing the evidence in the light most favorable to the non-moving party, the stark difference in treatment between Major Kemper and Captain Benton, combined with the temporal connection between Kemper's audit finding and his placement on leave, creates genuine issues of material facts as to whether the City's actions were motivated by discriminatory intent rather than legitimate business reasons.

Accordingly, summary judgment must be denied on the equal protection claim against the City of Jackson. For the same reasons, Plaintiff's motion for summary judgment on the equal protection claim is also denied, as disputed factual issues remain for trial.

### E.     Title VII Claims

A plaintiff must exhaust administrative remedies by filing a charge with the EEOC before pursuing a Title VII claim in federal court. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). It is undisputed that Major Kemper did not file an EEOC charge. (ECF No. 54-1 at PageID 559.) This procedural failure is fatal to his Title VII claims, barring the Court from considering them. Given the dispositive defect, the Court need not address whether Major Kemper abandoned these claims.

Accordingly, the Title VII claims are dismissed for failure to exhaust administrative remedies.

---

[5] In footnote 11 of Defendants' brief opposing Plaintiff's motion for summary judgment, Defendants contend that Captain Benton is not a proper comparator because she was Major Kemper's subordinate. (ECF No. 53 at PageID 517–18.) However, Defendant did not move for summary judgment on these grounds.

**F.     Tennessee Whistleblower Claims**

Under the Tennessee Public Protection Act ("TPPA"), a plaintiff must be "discharged or terminated" to maintain a cause of action. Tenn. Code Ann. § 50-1-304(b). The Tennessee Supreme Court has strictly construed this requirement as "a complete severance of the employment relationship." *Harman v. Univ. of Tenn.*, 353 S.W.3d 734, 738–39 (Tenn. 2011).

While Muldrow expands the understanding of adverse employment actions under federal law, it does not alter the explicit statutory requirements of the TPPA. Because Major Kemper acknowledges that he remains employed and receives a salary, he cannot satisfy the TPPA's termination requirement under Tennessee law. Given the clear statutory bar, the Court need not address whether Major Kemper abandoned these claims.

Accordingly, these claims are dismissed, and Plaintiff's motion for summary judgment on his whistleblower claim is denied.

**G.     Malicious Harassment Claims**

To state a claim for malicious harassment under Tennessee law, a plaintiff must show the defendant was motivated by the plaintiff's "race, color, religion, ancestry, or national origin." *Montgomery v. Hall*, No. 3:19-cv-01113, 2020 U.S. Dist. LEXIS 124729, at *30 (M.D. Tenn. July 15, 2020) (citing *Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 Tenn. App. LEXIS 606, at *24 (Tenn. Ct. App. Aug. 22, 2016). Major Kemper has admitted that his harassment claims are not based on any protected characteristics. (ECF No. 54-1 at PageID 559–60.) The claim, therefore, fails as a matter of law. Given the admission, the Court need not address whether Major Kemper abandoned these claims.

Accordingly, these claims are also dismissed.

## **CONCLUSION**

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions for Summary Judgment (ECF No. 48; ECF No. 51). The Court **GRANTS** Defendants' Motion as to the official capacity claims against Mayor Conger and Chief Wiser, the individual capacity claims against Mayor Conger and Chief Wiser based on qualified immunity, the Title VII claims, the whistleblower claims, and the malicious harassment claims. The Court **DENIES** Defendants' Motion as to Plaintiff's due process claims and the equal protection claims against the City of Jackson.

The Court also **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 47) for the same reasons discussed above. This case will proceed to trial on Plaintiff's due process and equal protection claims against the City of Jackson.

**IT IS SO ORDERED**, this 24th day of January 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE